# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**　　　　　　　　　　　　　　　　　　　　　**CASE NO: 6:14-cr-282-Orl-28GJK**

**EUGENE CHISOLM**

## ORDER

Eugene Chisolm came before me for sentencing after a jury found him guilty of one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) and one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1).[1] This Order explains my determination of Defendant's sentencing range under the United States Sentencing Guidelines ("USSG") and my resolution of Defendant's objections to the sentencing range calculation urged by the Government.

### I.  Defendant's Objections

The probation office prepared four Presentence Reports ("PSRs") in this case. After Defendant objected to the base offense level in the third PSR (Doc. 49)—24 under USSG § 2K2.1(a)(2)—the probation office changed the base offense level to 14 under USSG § 2K2.1(a)(6) in the fourth and final PSR (Doc. 62) ("the PSR"). After that change was made, neither the Defendant nor the Government objected to that base offense level or to increases of: (1) two levels under USSG § 2K2.1(b)(4)(A) because the firearm at issue had been reported stolen and (2) four levels under USSG § 2K2.1(b)(6)(B) because

---

[1] Defendant was also charged with a third count—possession of a firearm in furtherance of a drug trafficking violation, in violation of 18 U.S.C. § 924(c)(1)(A)(i)—but the jury found him not guilty of that offense. (See Verdict, Doc. 36).

Defendant used or possessed the firearm in connection with another felony offense. Thus, the adjusted base offense level agreed to by the parties is 20. And, based on 11 Criminal History points, Defendant falls within Criminal History Category V absent another enhancement. With a base offense level of 20 and a Criminal History Category of V, Defendant's sentencing range would be 63 to 78 months under the Guidelines.

However, the PSR also included an enhancement under the Armed Career Criminal Act ("ACCA"), which provides for an increased sentence for a defendant who violates 18 U.S.C. § 922(g) and "has three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e).[2] If the ACCA enhancement applies, Defendant's total offense level would increase from 20 to 34 under USSG § 4B1.4(b)(3)(A), and his Criminal History Category would increase from V to VI under USSG § 4B1.4(c)(2), resulting in a Guidelines sentencing range of 262 to 327 months. Defendant objected to the ACCA enhancement, and at sentencing the parties argued their positions as to its applicability.

The PSR categorized Defendant as an armed career criminal based on: (1) a 1986 Florida burglary conviction; (2) a 1986 Florida robbery conviction; and (3) a 1992 Florida conviction for the sale of cocaine. (See Doc. 62 at 8). Defendant initially objected to all three of these convictions as bases for the ACCA enhancement, but at sentencing he withdrew his objection to the cocaine conviction. He maintained his objections to the burglary and robbery convictions, however, arguing that neither qualifies as a conviction for a "violent felony" under ACCA.

---

[2] The ACCA enhancement is described in USSG § 4B1.4.

2

## II. Analysis

The ACCA definition of "violent felony" includes several alternatives. The term "means any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). In ACCA parlance, paragraph (i) is "the elements clause"; the portion of paragraph (ii) that lists several felonies by name is "the enumerated offenses clause"; and the closing phrase of paragraph (ii) that begins "otherwise involves" is "the residual clause." On the face of the statute, an offense need only qualify under one of these three alternative definitions to constitute an ACCA "violent felony."

However, on June 26, 2015, the Supreme Court held that ACCA's residual clause is unconstitutional—specifically, "that imposing an increased sentence under the residual clause of [ACCA] violates the Constitution's guarantee of due process." Samuel[3] Johnson v. United States, 135 S. Ct. 2551, 2563 (2015). Thus, only two viable alternative definitions of "violent felony" now remain in the statute—the definitions under the elements clause and the enumerated offenses clause. See id. ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."). Defendant contends that neither his burglary conviction nor his robbery conviction fits within either of these two alternatives.

---

[3] Because two Supreme Court opinions named Johnson v. United States are discussed in this Order, the first name of the Johnson defendants is included in citations to those cases.

### A. Burglary

The Florida burglary statute that Defendant was convicted of violating in 1986 provides: "'Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." § 810.02, Fla. Stat. (1986). It does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," and thus Defendant's burglary conviction does not qualify as an ACCA predicate felony under the elements clause. And, after Samuel Johnson, neither burglary nor any other offense can qualify under ACCA's residual clause.[4] Thus, the only possible way the 1986 burglary conviction can serve as an ACCA predicate felony is under ACCA's "enumerated offenses" clause.

Burglary is indeed listed as an enumerated offense in ACCA. See 18 U.S.C. § 924(e)(2)(B)(ii) (listing "burglary, arson, [and] extortion" as violent felonies). However, not all offenses labeled "burglary" in a state statute constitute burglary under ACCA. In Taylor v. United States, 495 U.S. 575, 598 (1990), the Supreme Court explained that the meaning of burglary in ACCA is "the generic, contemporary meaning of burglary," which the Court defined as a "crime, regardless of its exact definition or label, having the basic elements of

---

[4] Prior to Samuel Johnson, the Supreme Court held that a conviction for Florida attempted burglary qualified under ACCA's residual clause. James v. United States, 550 U.S. 192 (2007). See also, e.g., United States v. Williams, 603 F. App'x 919 (11th Cir. Mar. 18, 2015) (finding Florida burglary convictions qualified under ACCA residual clause), vacated, --- S. Ct. ---, No. 14-10343, 2015 WL 3604215 (Oct. 5, 2015) (Mem.); United States v. Kirk, 767 F.3d 1136 (11th Cir. 2014) (same), vacated, 135 S. Ct. 2941 (2015); United States v. Matthews, 466 F.3d 1271, 1275 (11th Cir. 2006) (same). James, however, was expressly overruled in Samuel Johnson, see 135 S. Ct. at 2563, and no case relying on ACCA's residual clause survives Samuel Johnson's holding that imposing an increased sentence based on ACCA's residual clause violates due process.

unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Id. at 599.

Because not all burglary statutes fit precisely within the Taylor court's formulation of the elements of the offense, sentencing courts often must analyze the statute of conviction to determine whether the prior conviction was for generic burglary or something broader. "The Supreme Court has developed two methods for determining whether a prior conviction meets the generic definition of burglary: the categorical approach and the modified categorical approach." United States v. Howard, 742 F.3d 1334, 1342 (11th Cir. 2014). "The first thing [a court does] is examine the statute of conviction using the categorical approach." Id. at 1345. Under this approach, a court must "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor, 495 U.S. at 600. "A conviction will qualify as an ACCA predicate under the categorical approach 'only if the statute's elements are the same as, or narrower than, those of the generic offense.'" Howard, 742 F.3d at 1345 (quoting Descamps v. United States, 133 S. Ct. 2276, 2281 (2013)). "If the statute is generic . . . all convictions under the statute necessarily count as ACCA predicates and there is no need for further analysis." Id.

If the categorical approach does not resolve the issue of whether a prior conviction meets the generic definition, a court may, "in a narrow range of cases," apply the modified categorical approach and look beyond the mere fact of conviction. Taylor, 494 U.S. at 602. The modified categorical approach may be applied only where a statute is "'divisible'—i.e., comprises multiple, alternative versions of the crime." Descamps, 133 S. Ct. at 2284.

5

Under either approach, the focus remains on the elements of the crime and not on the facts of the prior conviction:

> [T]he modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.' If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of.

Id. at 2285 (alteration in original) (internal citation omitted). In cases in which application of the modified categorical approach is appropriate, a sentencing court can, in addition to the statutory definitions and the fact of conviction, consider the charging document, jury instructions, a written plea agreement, a transcript of a plea colloquy, and "any explicit factual finding by the trial judge to which the defendant assented," Shepard v. United States, 544 U.S. 13, 16 (2005)—so-called "Shepard documents." "A court may use the modified categorical approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." Descamps, 133 S. Ct. at 2294.

Here, under the first step of examining the statute of conviction under the categorical approach, Florida's burglary statute is not generic for at least two reasons. First, it includes "conveyances" as well as "structures," and the Supreme Court's definition of generic burglary includes only "buildings" and "structures," not "conveyances." See Taylor, 495 U.S. at 599. Second, for purposes of the Florida burglary statute, the term "structure" is defined as "a building of any kind, either temporary or permanent, which has a roof over it, **together with the curtilage thereof.**" § 810.011(1), Fla. Stat. (1986) (emphasis added). The inclusion of curtilage in this definition renders Florida burglary of a structure broader

6

than generic burglary. James v. United States, 550 U.S. 192, 212 (2007) ("We agree that the inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of 'generic burglary' set forth in Taylor, which requires an unlawful entry into, or remaining in, 'a *building or other structure*.'" (emphasis in original)), overruled on other grounds by Samuel Johnson v. United States, 135 S. Ct. 2551 (2015).

Because the Florida burglary statute is non-generic, the next question is whether it "is a divisible statute to which sentencing courts can apply the modified categorical approach." Howard, 742 F.3d at 1347-48. A statute is divisible if it "comprises multiple, alternative versions of the crime." Descamps, 133 S. Ct. at 2284. On the other hand, a statute is indivisible where it "criminalizes a broader swath of conduct than the relevant generic offense" rather than containing alternative elements. Id. at 2281. If a statute is not divisible, "the inquiry is over" before consideration of documents beyond those regarding the fact of conviction. Id. at 2286.

The Florida burglary statute is, to some extent, divisible—it proscribes "entering or remaining in a structure **or** a conveyance with the intent to commit an offense therein." § 810.02, Fla. Stat. (emphasis added). Insofar as the statute distinguishes between structures and conveyances, it is indeed divisible. Descamps, 133 S. Ct. at 2281 (explaining that a divisible statute "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile"); accord Howard, 742 F.3d at 1348; cf. Taylor, 495 U.S. at 602 (explaining that "[f]or example, in a State whose burglary statutes include entry of an automobile as well as a building, . . . then the Government should be allowed to use the conviction for enhancement" if it can present appropriate documents showing that the defendant was

charged with, and necessarily found guilty of, burglary of a building rather than burglary of an automobile).

However, the divisibility of the Florida burglary statute between burglary of a structure and burglary of a conveyance is not the sort of divisibility that supports application of the modified categorical approach. Divisibility is only significant "[i]f at least one, but not all of th[e] crimes [in the statute] matches the generic version," because then "a court needs a way to find out which [crime] the defendant was convicted of." Descamps, 133 S. Ct. at 2285. Burglary of a conveyance does not constitute generic burglary, and a Florida conviction for burglary of a conveyance would thus not constitute an ACCA violent felony. Setting aside the "burglary of a conveyance" portion of the Florida statute and considering only the "burglary of a structure" component, burglary of a structure is not generic burglary and is not divisible. Instead, as explained below, it "criminalizes a broader swath of conduct than the relevant generic offense." Id. at 2281.

At sentencing, the Government argued that the statute is divisible "because a person could commit a burglary by being on the curtilage or entering the structure." This argument is circular and misses the mark. As noted earlier, "structure" is defined for purposes of the burglary statute as including the curtilage of a building. § 810.011, Fla. Stat. (1986). In other words, "Florida does not consider burglary of the curtilage of a structure to be a crime distinct from burglary of that structure." United States v. Matthews, 466 F.3d 1271, 1274 (11th Cir. 2006) (citing Henry v. State, 707 So. 2d 370, 372 (Fla. 1st DCA 1998)).[5] Because the definition of "structure" includes "curtilage," burglary of a

---

[5] In Matthews, the defendant argued that burglary of curtilage is not generic burglary and the Government maintained that it is. 466 F.3d at 1273. The Eleventh Circuit did not address that issue, however; instead, it ruled that burglary of curtilage qualifies as a violent

structure can be committed through burglary of curtilage only, which does not constitute generic burglary. Curtilage is not an alternative element but an inherent part of the definition of "structure." The inclusion of curtilage in the definition of "structure" thus renders the Florida burglary statute indivisible for all relevant purposes.

This is consistent with the reasoning of the Supreme Court in <u>Descamps</u>, where the Court considered a prior burglary conviction under a California statute that did not require unlawful entry but instead would cover "a shoplifter who enters a store, like any customer, during normal business hours." 133 S. Ct. at 2282. The Court determined that a person convicted under that statute "is never convicted of the generic crime" because the statute "does not require the factfinder (whether jury or judge) to" determine whether the defendant committed generic burglary, which includes illegal entering. <u>Id.</u> at 2292-93. Thus, the Court held, the statute was not divisible, and use of the modified categorical approach was not appropriate. <u>Id.</u> at 2293. Like the California statute at issue in <u>Descamps</u>, the Florida burglary statute covers more than generic burglary, and it does not require the factfinder to assess whether an accused actually committed all the elements of generic burglary.

And, in <u>Howard</u>, the Eleventh Circuit examined an Alabama burglary statute that provided that "'[a] person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.'" 742 F.3d at 1348 (alteration in original) (quoting Ala. Code § 13A-7-7(a)). After stating that the statute "appears to match all three elements of generic burglary," the <u>Howard</u> court noted that "building" is defined for purposes of the Alabama burglary statute as "'[a]ny structure

---

felony under ACCA's residual clause. <u>Id.</u> at 1275. This holding does not survive <u>Samuel Johnson</u>.

9

which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof.'" Id. (quoting Ala. Code § 13A-&-1(2)).

The Howard court explained that the Alabama statute "provides one definition of building and then includes a non-exhaustive list of things that fall under that definition." Id. Concluding that "illustrative examples are not alternative elements," id., the court found that the Alabama burglary statute is "non-generic and indivisible" and that a conviction under it "cannot qualify as generic burglary under the ACCA," id. at 1349. Although the problem in the case at bar is the inclusion of "curtilage"—rather than a list of illustrative examples—in the definition of "structure" in the Florida burglary statute, the same result obtains here as in Howard. The definitions in both statutes render them non-generic and indivisible.

In sum, the Florida burglary statute defines burglary "overbroadly" rather than "alternatively," Descamps, 133 S. Ct. at 2286, and it is indivisible. Because the statute is indivisible, review by this Court of a "plea colloquy or other approved extra-statutory documents" is not authorized, and "the inquiry is over."[6] Id. Defendant's 1986 Florida

---

[6] Defendant argued at sentencing that even if the Court considered the Government's Shepard documents regarding the burglary conviction, those documents would fail to establish that the conviction was for generic burglary. The Government urged that the charging instrument against Defendant in the 1986 burglary case (Doc. 62 at 32-33) charged that Defendant burglarized a structure, West Tampa Middle School, and that it "doesn't say curtilage. It says structure." The Government asserted that this language from the charging instrument "makes it clear that what was burglarized was a structure." Because the definition of "structure" includes "curtilage," however, this argument is, like the Government's divisibility argument, circular and unavailing. Defendant is correct that the

burglary conviction cannot constitute an ACCA predicate felony conviction, and Defendant's objection to the PSR on this basis is sustained.

### B. Robbery

Unlike burglary, robbery is not an enumerated felony under ACCA, and thus for robbery to qualify as an ACCA predicate felony it must do so under the "elements clause"—and have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Eleventh Circuit held in Lockley v. State, 632 F.3d 1238, 1245 (11th Cir. 2011), that Florida robbery categorically satisfies the elements clause.[7] This binding precedent would appear to readily dispose of this issue, but Defendant contends that Lockley is distinguishable because it involved a 2001 conviction, while his conviction dates to 1986. Defendant argues that at the time of his robbery conviction, Florida law was unclear with regard to the force required to elevate an offense from larceny to robbery and that this uncertainty precludes categorization of his 1986 robbery conviction as an ACCA predicate felony conviction under the elements clause. This argument is unavailing.

---

charging document does nothing to clarify whether Defendant committed generic burglary or only burglary of curtilage. Thus, even if the Court considered Shepard documents here, the result would be the same—Defendant's Florida burglary conviction is not an ACCA predicate felony conviction.

[7] Although the Lockley court analyzed the elements clause of the career offender enhancement—USSG § 4B1.2(a)—rather than the elements clause of ACCA, these clauses are similarly worded and the same analysis applies to both in determining what crimes fall within them. See Lockley, 632 F.3d at 1243 n.5; see also United States v. Welch, 683 F.3d 1304, 1312 (11th Cir. 2012) ("We see no reason not to apply Lockley to a case addressing whether Florida robbery is a 'violent felony' under the Armed Career Criminal Act.").

In 1986, Florida's robbery statute provided: "'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (1986).[8] Defendant notes that prior to 1997, when Robinson v. State, 692 So. 2d 883 (Fla. 1997), was decided—"several intermediate appellate courts in Florida had held that a conviction for 'robbery by force' would be permissible even upon proof of only the slightest force—that necessary to 'snatch' money from another's hands or physical possession." (Def.'s Sentencing Mem., Doc. 61, at 5). Defendant argues that a "snatching" amount of force is not sufficient to categorically render a conviction a "violent felony" conviction under the elements clause of ACCA and that his 1986 conviction could have been based on only that amount of force.

Although Defendant describes the state of the law in Florida in 1986 as casting doubt on whether Defendant's 1986 robbery conviction was necessarily for a crime involving the use of force within the elements clause of ACCA, this argument misses the mark. In Robinson, the Supreme Court of Florida overturned a ruling by Florida's First District Court of Appeal "that the degree of force required to snatch property from a person, even without resistance by or injury to the victim, was sufficient to satisfy" the element of force in Florida's robbery statute. 692 So. 2d at 885. The First District's decision was in conflict with decisions from the Second and Third Districts, see id. at 884, but was in accord

---

[8] The current version of this statute—the version addressed in Lockley, see 632 F.3d at 1242 (quoting the statute)—is similarly worded with regard to "force, violence, assault, or putting in fear." It provides: "'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (2015).

12

with a decision of the Fifth District, Andre v. State,[9] upon which it relied, see id. at 886. In quashing the First District's ruling and disapproving the Fifth District's opinion in Andre, the Robinson court stated: "In accord with our decision in McCloud,[10] we find that in order for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person. Rather, there must be resistance by the victim that is overcome by the physical force of the offender." 692 So. 2d at 886.

At sentencing, Defendant described the Florida Supreme Court as "changing course" in Robinson in 1997, but as noted above Robinson viewed its decision as "[i]n accord with" McCloud, which was decided in 1976. The Robinson court seemed to suggest that the Fifth District's reliance on and application of McCloud in Andre was misplaced. See 692 So.2d at 886.[11] In other words, Robinson did not change Florida Supreme Court's view of the issue but only clarified and reiterated it. See also id. at 887 ("Florida courts have consistently recognized that in snatching situations, the element of force as defined

---

[9] 431 So. 2d 1042 (Fla. 5th DCA 1983).

[10] McCloud v. State, 335 So. 2d 257 (Fla. 1976).

[11] The pre-Robinson First and Fifth Districts' reading of prior Florida Supreme Court cases as holding that mere "snatching" was sufficient to sustain a robbery conviction—and Defendant's argument based on such a reading—requires taking dicta out of context. The pre-Robinson Florida Supreme Court cases also spoke of "physical force" and force "necessary to overcome resistance" rather than mere snatching. See Montsdoca v. State, 93 So. 157, 159 (Fla. 1922) ("The degree of force used is immaterial. All the force that is required to make the offense a robbery [rather than a larceny] is such force as is actually sufficient to overcome the victim's resistance."); McCloud, 335 So. 2d at 258-59 ("Any degree of force suffices to convert larceny into a robbery. Where no force is exerted upon the victim's person . . . only a larceny is committed. The facts developed at McCloud's trial indicated that he gained possession of his victim's purse not by stealth, but by exerting physical force to extract it from her grasp." (citing Montsdoca and Colby v. State, 35 So. 189 (Fla. 1903)).

herein distinguishes the offenses of theft and robbery." (citing decisions from Florida's Second and Third District Courts of Appeal)).

An argument based on the uncertain state of pre-1997 Florida robbery law was made by the appellant in United States v. Welch, 683 F.3d 1304 (11th Cir. 2012), which involved a 1996 Florida robbery conviction, see id. at 1307. There, the appellant asserted that the Eleventh Circuit "should distinguish Lockley because Lockley was convicted after Florida promulgated [a] 'sudden snatching' statute" in apparent response to Robinson. Id. at 1312. After noting that the distinction urged "may fairly be made," id., the Eleventh Circuit did not reach the issue, concluding that it "need not decide whether snatching is sufficiently violent under the elements clause [of ACCA], because it suffices under the residual clause," id. at 1313.[12] Before doing so, however, the Welch court noted that the defendant there pleaded guilty prior to the Florida Supreme Court's Robinson decision in a circuit court within Florida's Fourth District Court of Appeal, which "had not yet spoken definitively on the question" of whether mere snatching was sufficient. Id. at 1311 & n.32.

Unlike the defendant in Welch, Defendant was convicted within a Florida appellate district that had "spoken definitively on the question." Defendant's 1986 conviction was in Hillsborough County, which is within the Second District Court of Appeal. The Second District ruled both prior to and after 1986 that more than mere "snatching" is required to sustain a robbery conviction. See, e.g., Adams v. State, 295 So. 2d 114, 116 (2d DCA 1974) (holding that the trial court correctly instructed the jury that the use of physical force to overcome victim's resistance was necessary for offense to amount to robbery);

---

[12] Of course, in light of the Supreme Court's Samuel Johnson decision, courts may no longer rely on ACCA's residual clause to increase a sentence.

14

Goldsmith v. State, 573 So. 2d 445, 445 (Fla. 2d DCA 1991) ("The slight force used . . . to remove the bill from [victim's] hand is insufficient to constitute the crime of robbery."). Adams was cited as in line with the majority view in Florida in S.W. v. State, 513 So. 2d 1088, 1091 (Fla. 3d DCA 1987), a case in which the Fifth DCA's Andre decision was expressly disapproved, and Goldsmith was cited in Robinson as among those decisions in which Florida courts had "consistently recognized" the element of force that distinguished theft from robbery in "snatching" cases, see Robinson, 692 So. 2d at 887. In sum, there is no reason for doubt as to the state of the law within the district of Defendant's 1986 robbery conviction. Accordingly, Defendant's snatching-based argument fails.

Defendant also argues that his robbery conviction does not satisfy the elements clause because "putting in fear" does not necessarily require a threatened use of physical force. However, that argument was squarely rejected in Lockley. See 632 F.3d at 1245 ("[W]e find it inconceivable that any act which causes the victim to fear death or great bodily harm would not involve the use or threatened use of physical force. Section 812.13(1) accordingly has, as an element, the 'use, attempted use, or threatened use of physical force against the person of another.'")).[13]

Finally, I reject Defendant's argument—based on the Supreme Court's decision in Curtis Johnson v. United States, 559 U.S. 133 (2010)—that Florida robbery does not have as an element "physical force" because "physical force" means "violent force." In Curtis Johnson, the Supreme Court addressed whether committing battery by "actually and intentionally touching another person" necessarily constituted using "physical force" under

---

[13] I also reject Defendant's argument that a threat to touch someone with a rag that has poison on it is not a threatened use of physical force within ACCA's elements clause. (See Doc. 61 at 6).

15

ACCA's elements clause. In that context, and in answering the question presented in the negative, the Court equated "physical force" with "violent force—that is, force capable of causing physical pain or injury to another person." Id. at 140 (emphasis removed). The fact that the Court did so in analyzing whether an "intentional unwanted touching" in the battery setting requires "physical force" does not mean that the amount of force required for a Florida robbery conviction is not "physical force" under the elements clause. Moreover, Curtis Johnson predates the Eleventh Circuit's Lockley decision, in which the appellate court squarely held that Florida robbery is a violent felony under the elements clause. In doing so, the Eleventh Circuit stated that all but the "putting in fear" means of committing Florida robbery "specifically require the use or threatened use of physical force." 632 F.3d at 1245. And, as earlier noted, the Lockley court also concluded that the "putting in fear" means of committing robbery "involve[s] the use or threatened use of physical force." Id.

In sum, the Eleventh Circuit held in Lockley that Florida's robbery statute satisfies the elements clause of ACCA, and Defendant has not persuaded this Court that his case is distinguishable from Lockley or presented any persuasive reason that Lockley should not be adhered to. Accordingly, Defendant's objection to the use of his 1986 Florida robbery conviction as an ACCA predicate felony conviction is overruled.

### III. Conclusion

Defendant's objection to his categorization as an armed career criminal is sustained. Although Defendant's objection to the use of his 1986 Florida robbery conviction as an ACCA predicate felony is overruled, his objection as to his 1986 Florida burglary conviction is sustained. Without the burglary conviction, only two predicate felony convictions remain, and three are required for the ACCA enhancement. Absent the ACCA enhancement, the

parties agreed that Defendant's Criminal History Category is V and that his total offense level is 20, for a Guidelines sentencing range of 63-78 months. The sentence imposed was 78 months.

**DONE** and **ORDERED** in Orlando, Florida, on October 29, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Eugene Chisolm